S04A1466. BROWN v. THE STATE.

(602 SE2d 834)

THOMPSON, Justice.

Glenda Sue Brown and Christie Lynn Crider ("Christie") were charged in separate but identical 18-count indictments with the murder of Christie's father, Harold Crider ("Mr. Crider"), aggravated assault on Christie's mother, Judy Crider ("Mrs. Crider"), as well as armed robbery and numerous other offenses.[1] Christie entered into a negotiated plea agreement in exchange for the State's concession not to pursue the death penalty against her. She was sentenced to life without possibility of parole, and she testified against Brown at trial.

Brown was found guilty as charged. On appeal, she claims that the trial court erred in allowing voice identification testimony which placed her at the scene of the crime, and in failing to give a requested jury instruction on voice identification. Finding no error, we affirm.

[1] The crimes took place on October 23, 1998. An indictment was returned on May 4, 1999, charging Brown with malice murder, felony murder while in the commission of an aggravated assault, aggravated assault (11 counts), aggravated battery (two counts), armed robbery (two counts), and theft by taking. Trial commenced on December 6, 1999; on December 13, 1999, a jury found Brown guilty of all counts. On the same day, Brown was sentenced to life imprisonment for murder, concurrent terms for the aggravated assaults on Harold Crider, a consecutive term of life for armed robbery, and consecutive terms for the remaining offenses. A motion for new trial was filed on December 21, 1999, and denied on October 7, 2003. A notice of appeal was filed on November 4, 2003. The case was docketed in this Court on May 5, 2004, and was submitted for a decision on the briefs on June 28, 2004.

Brown and Christie plotted to rob and murder Christie's parents. In preparation for the crime, Christie obtained a .38 revolver from her parents' bedroom and brought it to Brown's home. Later that night both women returned to the Crider home wearing gloves and black clothing, and armed with the .38 revolver. As Mr. and Mrs. Crider returned home from work, Christie came out of her bedroom and began firing the .38, striking her mother in the arm. Brown took the pistol from Christie and fired four shots at Mr. Crider; both parents retreated into a bathroom. The perpetrators had emptied the .38 of bullets, so Christie got her father's shotgun, loaded it, and gave it to Brown. Mr. Crider left the bathroom in an attempt to talk to his daughter. At that point, he and Brown struggled, and according to Christie, Brown shot him with the shotgun. Mr. Crider fell back into the hallway.

During the time that Mrs. Crider was in the bathroom, she could not see what was happening, but she heard Christie ask, "Do you want any of this makeup?" A female voice replied, "I don't know." Mrs. Crider recognized the voice as belonging to Christie's girlfriend Brown because Brown had telephoned the Crider home "numerous" times to talk to Christie and had identified herself. Mrs. Crider testified that Brown had a "distinctive voice," and "the minute I heard that, I knowed [sic] who that voice belonged to." Brown also told Christie to throw a candy dish on the floor to make it appear as a robbery. Brown told Christie that she had "finished off" her father, and she gave Christie the shotgun with instructions to shoot and kill her mother. Christie shot at Mrs. Crider and the perpetrators ran from the house. They took with them Mrs. Crider's handbag containing currency, her wristwatch and jewelry, her makeup, Mr. Crider's wristwatch and engraved cigarette lighter, and five credit cards which they removed from a safe in the master bedroom. Mr. Crider died as a result of multiple gunshot wounds; he also sustained several knife wounds to his arms, shoulders, and back. Mrs. Crider was severely injured during the attack.

The two perpetrators drove to a nearby convenience store where Brown was filmed on a surveillance tape dressed in dark clothing and purchasing gasoline, beer, and cigarettes. After leaving the store, they drove to Brown's apartment, discarding the shotgun, gloves, and some clothing along their route.

Mrs. Crider told the police that her daughter Christie, and her daughter's girlfriend, Brown, had perpetrated the attack. The police located Christie's car parked at Brown's residence, and the two women were found inside the apartment. Brown consented to a search of the premises. Credit cards and jewelry belonging to Mrs. Crider were found under a sofa cushion. Christie was arrested and taken into custody.

The next day, Brown sought out the police investigators and gave them a voluntary statement in which she described the attack in great detail. She claimed that Christie planned and carried out the crime, and afterwards told Brown everything that had occurred. Brown's information led the police to three guns, a bloody butcher knife, and four latex gloves concealed in a wooded area near the Crider home. Jewelry, a cigarette lighter, and makeup belonging to Mrs. Crider were found in Brown's purse.

1. The evidence was sufficient to enable a rational trier of fact to find Brown guilty beyond a reasonable doubt of the crimes for which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. It is asserted that Mrs. Crider's testimony identifying Brown's voice at the scene of the crime was inadmissible based on the lack of a proper foundation.

" '(A)lthough voice identification testimony is generally considered to be direct evidence (cits.), Georgia courts have construed such testimony to be opinion evidence, which, of course, is inadmissible unless the witness discloses the basis for his opinion.' " *Shepherd v. State*, 173 Ga. App. 499, 500-501 (1) (326 SE2d 596) (1985). In addition, "proof of telephone conversations may be admissible in evidence when the identity of the person against whom the conversation is sought to be admitted is established by circumstantial as well as direct evidence." *Constantino v. State*, 243 Ga. 595, 599 (3) (255 SE2d 710) (1979). " '[T]he probative value to be accorded such evidence is a matter for the jury's determination.' " *Shepherd,* supra at 501.

Not only did Mrs. Crider state that Brown had a "distinctive voice" which she recognized from "numerous conversations with her on the telephone," Brown herself confirmed in her statement to the police that she had telephoned the Crider home on several occasions asking for Christie, and she had identified herself to Mrs. Crider. Christie also testified that she was present "numerous times" when Brown telephoned their home and spoke with Mrs. Crider. Under the circumstances, the evidence established a sufficient basis to admit Mrs. Crider's opinion testimony that the second female voice she heard during the attack was that of Brown. See *Constantino,* supra at 599 (3) (voice identification may be admissible where based on prior telephone conversations; it is not necessary that the speakers had met or spoken face to face). Compare *Price v. State*, 208 Ga. 695 (1) (69 SE2d 253) (1952) (where the testifying witness did not know the other person on the telephone, had not ever heard the voice, and the identity of the other person is not otherwise established, the conversation is inadmissible hearsay).

3. Brown requested a jury instruction which read:

certain lay or non-expert opinion evidence has been admitted for your consideration in this case in the form of voice identification testimony. The credibility of the witness making the identification is for you the jury. . . . [I]n determining credibility, a witnesses' opinion of *the identity of an individual is not sufficient if that opinion is based solely upon what is said in telephone conversations.*

The italicized language is adapted from *Constantino,* supra at 599. In that case a witness was permitted to identify a defendant's voice based on prior telephone conversations during which the caller had identified himself by name; the witness was also permitted to testify to the contents of subsequent telephone conversations with the caller. She was not, however, permitted to testify to the content of conversations with another caller where the identity of the caller was known only from the conversations themselves. As discussed in Division 2, supra, the identification of Brown's voice was based on numerous prior telephone conversations with Mrs. Crider during which Brown identified herself by name. And unlike *Constantino,* the evidence was admitted solely for voice identification, not to prove the content of the conversations. See also *Brown v. State,* 266 Ga. 723 (3) (470 SE2d 652) (1996) (there must be a sufficient basis for a witness to identify a person with whom he spoke over the telephone before testifying to the contents of the conversation).

In the present case, the italicized portion of the requested charge was not adjusted to the evidence, and consequently, should not have been given. See *Gardner v. State,* 273 Ga. 809, 813 (6) (546 SE2d 490) (2001) (requested charge must be "legal, apt and precisely adjusted to some principle involved in the case and be authorized by the evidence"). In addition, the court gave the full pattern jury instructions on identity and credibility. Thus, the charge given substantially and adequately covered the applicable principles of law embodied in the requested charge. See generally *Johnson v. State,* 276 Ga. 57 (3) (573 SE2d 362) (2002).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 13, 2004.

*Jennifer E. Hildebrand,* for appellant.

*Herbert E. Franklin, Jr., District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General,* for appellee.