S05A0870. SCOTT v. THE STATE.
(619 SE2d 653)

SEARS, Chief Justice.

The appellant, Eddie Scott, appeals from his conviction for the felony murder of Frank Mealer.[1] On appeal, Scott contends, among other things, that the trial court erred in ruling that a 911 audiotape had been properly authenticated, and that he received ineffective assistance of trial counsel. For the reasons that follow, we conclude

---

[1] The crime occurred on August 8, 2001, and Mealer died on December 1, 2001. Scott was indicted on March 7, 2003, and on October 22, 2003, a jury found Scott guilty of felony murder and aggravated battery. As the aggravated battery served as the underlying felony for the felony murder charge, the conviction for aggravated battery merged with the conviction for felony murder. The trial court sentenced Scott to life in prison. Scott obtained new counsel for appeal, and on November 4, 2003, Scott filed a motion for new trial. The court reporter certified the trial transcript on March 20, 2004, and on June 7, 2004, Scott amended his motion for new trial. The trial court denied Scott's motion for new trial, as amended, on September 10, 2004. On December 28, 2004, Scott filed a motion for an out-of-time appeal, and on January 12, 2005, the trial court granted the motion. On January 28, 2005, Scott filed his notice of appeal, and on February 8, 2005, the appeal was docketed in this Court. The appeal was submitted for decision on briefs on April 4, 2005.

that Scott's contentions have no merit, and we thus affirm his conviction for felony murder.

1. A 911 operator, Susan Bell, testified that on August 8, 2001, a woman identifying herself as Sharon Hester called and stated that Scott was beating "the hell out of" the victim. An officer who responded to the 911 call observed injuries and abrasions on Mealer's head, face, and left arm. Mealer refused medical treatment that morning. Later that afternoon, Mealer asked his friend, Eddie Williams, to come over because he had been beaten. When Williams arrived about 5:30 to 6:00 p.m., Mealer was holding his head and complaining of a headache. At the time of the incident, Mealer was taking Coumadin, a blood-thinning medication, and several other medications because he had a prosthetic heart valve. Williams went to get Mealer some food, and then returned to work. About 8:30 p.m., Williams returned to Mealer's home, and found that Mealer's speech was slurred and that he was in extreme pain.

Williams then took Mealer to Newton General Hospital, where doctors ordered that he be transported to Atlanta Medical Center by helicopter. In Atlanta, it was determined that Mealer had developed three blood clots on his brain, and that one side of the brain had partially shifted to the other side as a result of the pressure caused by the blood clots. On August 21, 2001, surgery was performed to treat the blood clots. After the procedure, Mealer's condition initially improved, but he subsequently developed a blood infection in his bladder and in his prosthetic heart valve. Because the infections could not be treated by antibiotics, Mealer had to undergo heart valve replacement surgery. On September 27, 2001, during that surgery, Mealer suffered a stroke and fell into a coma. On December 1, 2001, Mealer died. A pathologist testified that the cause of death was a bacterial infection involving the heart, which arose from treatment for the blood clots.

At trial, Scott testified that he and Hester were living together at the time of the crimes. He added that, on the morning of August 8, 2001, while Scott was showering for work, Hester told him she was moving out of his home and that Hester left his residence with Mealer. After showering, Scott loaded his truck with some of Hester's belongings, drove to Mealer's residence, and put the belongings in Mealer's driveway. According to Scott, he then went back to his residence to gather the rest of Hester's belongings. When he returned to Mealer's home, Hester and Mealer were in the driveway. Scott added that Hester began screaming at him, and that Mealer asked him "what the hell" he was doing. Scott testified that he walked aggressively towards Mealer; that Mealer began walking backwards; that he (Scott) made contact with Mealer at least one time; that Mealer was wearing

house slippers; and that Mealer fell, rolled over, and got up. Scott added that he then left and did not see Mealer or Hester again.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Scott guilty of felony murder beyond a reasonable doubt.[2]

2. During the trial, the trial court excluded from evidence a medical report that mentioned that the victim had used cocaine. Scott had sought to introduce the evidence to support his contention that the cocaine abuse could have led to the infection that contributed to the victim's death. Scott's own expert, however, testified that any connection between the cocaine abuse and the infection was sheer speculation. The trial court therefore did not err in excluding the mention of cocaine use from evidence.[3]

3. Contrary to Scott's contention, the 911 audiotape was properly authenticated by the 911 operator and by the victim's daughter, who testified that she was familiar with the voices of Hester and Mealer and who identified Hester's and Mealer's voices on the audiotape.[4]

4. An audiotape of a statement that Scott gave to the police was played for the jury. During the tape, the detective conducting the interview referred to a charge of false imprisonment that had been made against Scott by Sharon Hester. On appeal, Scott contends that this reference impermissibly placed his character in issue. Scott, however, made no objection to the reference, and is therefore procedurally barred from raising the issue on appeal.[5]

5. Scott next contends that he received ineffective assistance of trial counsel because trial counsel failed to adequately prepare for trial. We find no merit to this contention.

On his claim of ineffective assistance of counsel, Scott bears the burden of showing that counsel's performance was deficient, and that, but for the deficient performance, there is a reasonable probability that the outcome of the trial would have been different.[6] As for trial counsel's preparation, trial counsel testified that, among other things, he reviewed the victim's medical records; that he researched brain injuries; that he filed motions for discovery; that, through discovery, he became familiar with all the State's witnesses and their

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Roseberry v. State*, 274 Ga. 301, 303 (553 SE2d 589) (2001) ("Evidence that impugns a victim's character cannot be admitted unless it has some factual nexus with the conclusion for which it is being offered. Sheer speculation is insufficient." (Footnotes omitted.)).

[4] See *Hudson v. State*, 273 Ga. 124, 127 (538 SE2d 751) (2000); *Brown v. State*, 278 Ga. 369, 371 (602 SE2d 834) (2004).

[5] *Zellars v. State*, 278 Ga. 481, 482-483 (604 SE2d 147) (2004).

[6] *Seabolt v. State*, 279 Ga. 518, 520-521 (616 SE2d 448) (2005); *Fletcher v. State*, 277 Ga. 795, 797 (596 SE2d 132) (2004).

possible testimony; that he met with and spoke to Scott on numerous occasions; that he obtained the services of an expert witness to review the relevant medical records and met with the expert after the expert had reviewed the records; that he went to the crime scene with his investigator and took photographs; that he discussed with Scott whether Scott should testify; that he went over Scott's testimony with him; that he spoke with Sharon Hester on several occasions to decide whether to call her as a witness; and that he spoke with Scott about potential witnesses that could be called for the defense. Having reviewed the record, we conclude that Scott has failed to carry his burden to show that trial counsel's performance in preparing for trial was deficient.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 19, 2005.

*Reed Edmondson, Jr.*, for appellant.

*W. Kendall Wynne, Jr.*, District Attorney, *Thurbert E. Baker*, Attorney General, *Chad E. Jacobs*, Assistant Attorney General, for appellee.