NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0409
Calvin Sneed
v.
The State

On Appeal from the Superior Court of Fulton County
No. 17SC151981

Decided: April 21, 2026

LAGRUA, Justice.

Appellant Calvin Sneed appeals his convictions for malice murder and other crimes related to the shooting death of Gregory Jones.[1] On appeal, Sneed argues that his convictions should be

---

[1] Jones was shot on February 13, 2017, and died on the morning of February 14, 2017. On May 19, 2017, a Fulton County grand jury indicted Sneed for the following counts: malice murder (Count 1); felony murder predicated on aggravated assault with a deadly weapon (Count 2); two counts of felony murder predicated on possession of a firearm by a convicted felon (Counts 3 and 4); two counts of aggravated assault with a deadly weapon (Counts 5 and 6); possession of a firearm during the commission of a felony (Count 7); possession of a firearm by a convicted felon pursuant to OCGA § 16-11-131 (Count 8); and possession of a firearm by a convicted felon during the commission of another felony pursuant to OCGA § 16-11-133 (Count 9). Sneed was tried from November 14 to 16, 2017, and the jury found him guilty on all counts except Count 6. The trial court sentenced Sneed to serve life in prison without the possibility of parole for Count 1; five consecutive years for Count 7; five years for Count 8, to be served concurrently with the sentence for Count 1; and fifteen years for Count 9, to be served consecutively with the sentence for Count 1 and concurrently with the sentence for Count 7, for a total sentence

reversed because his trial counsel was constitutionally ineffective in two ways—by failing to object when the prosecutor commented on the veracity of a witness during the State's closing argument, and by failing to object during the State's closing argument when the prosecutor argued facts not in evidence concerning the trajectory of one of the bullets and Jones's position when he was shot.

As an initial matter, because we conclude that the trial court committed certain merger errors, we vacate Sneed's convictions and sentences for possession of a firearm during the commission of a felony (Count 7) and possession of a firearm by a convicted felon pursuant to OCGA § 16-11-131 (Count 8) and remand Sneed's case for the trial court to correct the sentence summary in the final disposition form. Otherwise, because we see no merit to Sneed's ineffective-assistance-of-counsel claims, we affirm Sneed's remaining convictions and sentences.

The evidence presented at trial showed that, on the night of February 13, 2017, Sneed shot Jones four times in the front yard of the house where Jones lived with three other people: his mother, Antoniette Williams—who was Sneed's mistress; Jones's grandmother, Mary Andrews; and Jones's brother, Antonus Alexander. Following the shooting, Jones was transported to the hospital "where he was pronounced dead approximately nine hours

---

of life without parole plus twenty years. Counts 2 through 5 merged or were vacated by operation of law. We address the merger issues in Division 2 below.

Sneed filed a timely motion for new trial, which he later amended through new counsel on November 29, 2023. After holding an evidentiary hearing on the motion for new trial, the motion-for-new-trial court denied the motion on August 12, 2024. Sneed filed a timely notice of appeal on August 12, 2024 and an amended notice of appeal on August 13, 2024. This case was docketed in this Court to the term beginning in December 2025 and submitted for a decision on the briefs.

after admission."[2] At trial, Sneed claimed that he shot Jones in self-defense after Jones "confronted" him "in an[] aggressive manner and drew" a gun on him, at which point Sneed "wrestled the gun from" Jones and "discharged the weapon three times." According to Sneed, no one else was present when the shooting occurred.

In February 2017, Williams and Sneed had been in a romantic relationship for about three years. Jones did not approve of the relationship because Sneed was married and had children with another woman. Nevertheless, Jones and Sneed were "friendly" to one another, and Sneed would often help Jones out by giving him advice and rides to places he needed to go. Williams testified that, "[a]bout a year" before the shooting occurred, Jones and Sneed had a "scuffle," but that was the only disagreement she ever witnessed between the two men. Sneed similarly testified that he had only one altercation or argument with Jones, and during that altercation, Sneed actually "got the advance" on Jones by "scoop[ing]" Jones up and "put[ting] him on the ground."[3]

Around 10:15 p.m. on February 13, Jones picked up his next-door neighbor, Shardarrious Ragland, from work. Jones and Ragland returned to their neighborhood, and as they approached their adjacent houses, Ragland saw Williams and Sneed sitting in

---

[2] The medical examiner testified that Jones sustained four gunshot wounds—one to his chest, one to his abdomen, one to his upper back, and one in the back side of his left arm—and she determined that his cause of death was "gunshot wounds of the torso," resulting from either the gunshot wound to the chest, the gunshot wound to the abdomen, or both.

[3] Andrews testified that, after Jones and Sneed had this altercation, she warned Jones not to "turn his back" on Sneed because if Sneed "c[a]me after" Jones, Sneed would "come to hurt" him.

the front yard of the house Jones shared with his family. According to Williams, Sneed had picked her up after he got off work, and they "went out and got some beers," returning about 9:45 p.m. Williams had set up a table in the front yard where they were sitting and drinking the beer they bought. Shortly after Jones and Ragland returned home, Ragland heard Jones tell Sneed—who was still sitting in the front yard with Williams—"This ain't right. Man, you got to go." Suddenly, Sneed stood up and "started shooting" Jones, with the first shot entering Jones "[s]omewhere in the chest." Williams tried to stand up, but her chair was caught in the table. After Sneed shot Jones two or three times, Jones fell to the ground, and as he was lying "on his side" "in a fetal position" "with his hands up," he said to Sneed, "Please, I got you bro, please, please, don't shoot me no more, please, I got you." Sneed then shot Jones "two, three more times" while he was on the ground.[4] After hearing the gunshots, Alexander came outside from the house and saw Jones lying in the front yard, and Jones said, "he shot me, bro," referring to Sneed. Immediately after the shooting, Sneed "sped away" in his car.[5] The others helped Jones into the house and called 911. Around 7:30 a.m. the next morning, Jones died from his injuries.

Contrary to Sneed's trial testimony that he shot Jones in self-defense after Jones "brandish[ed] a gun" and Sneed "disarmed him," Williams and Ragland testified that Jones was not armed and never threatened Sneed with a gun that night, and the only person they saw in possession of a gun that night was

---

[4] The medical examiner confirmed that it was possible the gunshot wounds Jones sustained to his back and his left arm were "consistent with someone standing over someone and shooting down at them."

[5] At trial, Sneed admitted that he fled in his car after shooting Jones and did not call anyone for help.

4

Sneed.[6] And Williams testified that she recognized the gun Sneed used in the shooting because he kept this gun in the glove compartment of his car, and she had seen him carry the gun on prior occasions. One of the investigating officers testified that, when they interviewed Williams after the shooting, she said that Sneed carried a ".32 revolver" and used that gun to shoot Jones. And, although law enforcement officers never located the murder weapon, the State's firearm examiner testified that the bullets extracted from Jones's body during the autopsy were ".32 caliber, lead bullets … fired from the same firearm," which was a ".32 revolver." Sneed was arrested for Jones's murder on February 20, 2017.

1. Relying on *Strickland v. Washington*, 466 US 668, 687–95 (1984), Sneed argues that his trial counsel was constitutionally ineffective because, at two points during the State's closing argument, trial counsel should have raised an objection to certain of the prosecutor's statements and failed to do so.

Specifically, Sneed contends that his trial counsel performed deficiently by failing to object when the prosecutor told the jury during closing argument that it had "no reason not to believe [Williams]" because this statement was an improper comment on the veracity of a witness. Sneed also contends that his trial counsel performed deficiently by failing to object when the prosecutor commented in closing argument on the trajectory of the bullet that killed Jones because no evidence was presented to demonstrate Jones's position when the fatal bullet entered his body and because the State was merely trying to discredit Sneed's

---

[6] Williams, Ragland, Andrews, and Alexander also testified that they had never seen Jones with a gun, and he simply "wasn't a person who carried guns."

5

defense that he shot and killed Jones in self-defense. Sneed argues that his trial counsel's deficient performance in these respects prejudiced the outcome of Sneed's case. These arguments are unavailing.

> To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous.

*Saunders v. State*, 323 Ga. 136, 139 (2025) (citations and quotation marks omitted).

"To prove deficient performance, a defendant must show that his counsel performed in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Saunders*, 323 Ga. at 139 (quotation marks omitted). We have said that "[t]he reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case." *Nesbit v. State*, 321 Ga. 240, 247 (2025) (quotation marks omitted). And "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." Id. (quotation marks omitted). "To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different." *Saunders*, 323 Ga. at 140 (quotation marks omitted). If this Court concludes that the appellant has failed to meet his burden to prove either deficiency or prejudice, we do not have to examine the other prong. See id.

6

In denying Sneed's motion for new trial, the motion-for-new-trial court determined that Sneed failed to show his trial counsel performed deficiently by failing to object during closing argument when the prosecutor said the jury had no reason not to believe Williams or when the prosecutor described the trajectory of one of the bullets and the position of the victim at the time he was shot. The trial court concluded that an objection in either instance would have been meritless and that there was no prejudice because overwhelming evidence had been presented of Sneed's guilt. We agree.

First, we have held that

a closing argument is to be judged in the context in which it is made, and a prosecutor is granted wide latitude in the conduct of closing argument and within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses.

*Lee v. State*, 317 Ga. 880, 887 (2023) (cleaned up). "Moreover, whether to object to a particular part of a prosecutor's closing argument is a tactical decision, and counsel's decision not to make an objection must be patently unreasonable to rise to the level of deficient performance." Id. (cleaned up).

With respect to Sneed's first argument, we note that the comment at issue—i.e., that the jury had "no reason not to believe [Williams]"—is taken out of context. The record reflects that this statement was part of a lengthier argument in which the State informed the jury that the trial court would instruct the jury that the testimony of a single witness, if believed, was sufficient to prove the guilt of the defendant. The prosecutor then stated:

7

> If you believe just Ms. Williams alone, and *you have no reason not to believe her*, because she is consistent and she's corroborated by science, you're authorized to convict [Sneed] on everything in that indictment. But that's not all we gave you … and you get to determine the credibility of Ms. Williams.

Here, the prosecutor's statements pertaining to the testimony of Williams were "permissible since they were the conclusion the prosecutor wished the jury to draw from the evidence and not statements of the prosecutor's personal belief as to the veracity of the witnesses." *Lee*, 317 Ga. at 887–88 (cleaned up). Accordingly, "[b]ecause the prosecutor's comment was within the wide latitude offered to the State during closing argument, an objection was unwarranted, and trial counsel was not ineffective for failing to make one." *Jackson v. State*, 301 Ga. 774, 776 (2017).

Additionally, as to Sneed's second ineffectiveness claim—namely, that his trial counsel should have objected during closing argument after the prosecutor allegedly argued facts not in evidence when discussing the trajectory of a bullet—we conclude that the prosecutor's argument was a permissible inference drawn from the evidence presented at trial, and thus, Sneed's trial counsel was not deficient for failing to object to it. See *Faust v. State*, 302 Ga. 211, 220 (2017) (concluding that, where the prosecutor's argument was based on permissible inferences and supported by the facts in evidence, trial counsel's failure to make a meritless objection to the State's closing argument did not show that counsel's performance was professionally deficient).

At trial, the medical examiner testified that Jones suffered a gunshot wound to his upper back where the bullet traveled through the tissue without entering the body cavity. Photographs of this injury were admitted into evidence, including a picture

with a rod that demonstrated the bullet's trajectory. The medical examiner also conceded during direct examination that this injury could be consistent with someone standing over Jones and firing down at him.

During the State's closing argument, the prosecutor argued:

> I want you to look at that picture and I want you to look at this demonstrative that [the medical examiner] used. That gunshot in the back and in the picture, it went through and through. It was on the skin. It entered on one side. It was parallel. If [Jones] is falling down, it's going to be at an angle. It's not going to go from one side to the other directly in a straight line. But if [Jones] is lying down and [someone is] standing over him and … shooting down at him, it's going to go straight down from that angle. And you'll see the picture. In one of the exhibits, there is a rod that [the medical examiner] used to show the path of that bullet in Mr. Jones' back. It's straight down, parallel to the surface of the skin.

The State's argument about the trajectory of one of the bullets and its argument concerning Jones's position at the time he was shot did not introduce facts that were not in evidence. Instead, the State directed the jury to consider the pictures of Jones's injuries, along with the medical examiner's testimony, to draw a conclusion about the position of Jones's body when he was shot— a conclusion that matched the testimony of Ragland and Williams, who testified that Sneed shot Jones after he fell and was lying on the ground.

The State is permitted "wide latitude to argue reasonable

inferences from the evidence." *Styles v. State*, 308 Ga. 624, 629 (2020). Because the State made a proper argument based on the evidence admitted at trial, including inferences taken from an expert's opinion, Sneed's trial counsel was not constitutionally deficient in failing to object to the argument as any such objection would have been meritless. See id. See also *Glover v. State*, 309 Ga. 102, 106 (2020) (concluding that, because the appellant "pointed to no basis … on which counsel could have successfully objected to the prosecutor's comment" and because the "failure to make a meritless objection to the State's closing argument is not evidence of ineffective assistance," appellant's ineffectiveness claim failed) (quotation marks omitted). For these reasons, Sneed's ineffective-assistance-of-counsel claims fail.

2. We now address the merger errors noted above under *Dixon v. State*, 302 Ga. 691, 696 (2017) (holding that, "[e]ven when no party raises a merger error, if we note such an error" and the defendant is harmed by the error, "we have the discretion to correct it on direct appeal"). In this case, Sneed was convicted of malice murder (Count 1); felony murder predicated on aggravated assault with a deadly weapon (Count 2); two counts of felony murder predicated on possession of a firearm by a convicted felon (Counts 3 and 4); one count of aggravated assault with a deadly weapon (Count 5); possession of a firearm during the commission of a felony (Count 7); possession of a firearm by a convicted felon pursuant to OCGA § 16-11-131 (Count 8); and possession of a firearm by a convicted felon during the commission of another felony pursuant to OCGA § 16-11-133 (Count 9). The trial court sentenced Sneed to serve life in prison without the possibility of parole for Count 1; five years for Count 7, to be served consecutively with the sentence for Count 1; five years on Count 8, to be served concurrently with the sentence for Count 1; and fifteen years for Count 9, to be served consecutively with the sentence for Count 1

and concurrently with the sentence for Count 7.[7] Counts 2 through 5 merged or were vacated by operation of law.

As established in *Marshall v. State*, 309 Ga. 698, 701 (2020) and *Atkinson v. State*, 301 Ga. 518, 520–21 (2017), Count 7 (possession of a firearm during the commission of a felony) and Count 8 (possession of a firearm by a convicted felon pursuant to OCGA § 16-11-131) should have merged with Count 9 (possession of a firearm by a convicted felon during the commission of another felony pursuant to OCGA § 16-11-133), and because the trial court failed to merge these counts, we vacate Sneed's convictions and sentences on Counts 7 and 8.

Additionally, while the final disposition form reflects that the trial court sentenced Sneed to 15 years for Count 9, which is the statutorily required sentence for this charge, see OCGA § 16-11-133(b)(5) (requiring punishment "by confinement for a period 15 years, such sentence to run consecutively to any other sentence which the person has received"), the final disposition form states that Sneed is sentenced to life without parole plus *20* years (it should instead be *15* years). Accordingly, we must remand the case for the trial court to correct the sentence in the record.

*Judgment affirmed in part, vacated in part, and remanded for resentencing. All the Justices concur, except Warren, P. J., not participating.*

---

[7] The sentences on Counts 7 and 9 were suspended, but that does not impact our analysis.